*70 BENTON, J.,
concurring.
I concur in the majority opinion; however, I write separately to state my understanding that Part VI of the majority opinion interprets Code § 46.2-1569(7) in a fashion that clearly renders it immune from an attack that it is unconstitutionally vague and violates the Commerce Clause.
Although, as the majority opinion notes, Code § 46.2-1569(7) facially suggests that a determination of “the number of new vehicles” drives the analysis, when read as a whole, the statute reflects a policy that a dealer is to receive a fair share of vehicles being produced or imported nationally by the manufacturer. The statute provides as follows:
Notwithstanding the terms of any franchise agreement, it shall be unlawful for any manufacturer, factory branch, distributor, or distributor branch, or any field representative, officer, agent, or their representatives:
S|í ífí # # * ^
7. To fail to ship monthly to any dealer, if ordered by the dealer, the number of new vehicles of each make, series, and model needed by the dealer to receive a percentage of total new vehicle sales of each make, series, and model equitably related to the total new vehicle production or importation currently being achieved nationally by each make, series, and model covered under the franchise. Upon the written request of any dealer holding its sales or sales and service franchise, the manufacturer or distributor shall disclose to the dealer in writing the basis upon which new motor vehicles are allocated, scheduled, and delivered to the dealers of the same line-make. In the event that allocation is at issue in a request for a hearing, the dealer may demand the Commissioner to direct that the manufacturer or distributor provide to the dealer, within thirty days of such demand, all records of sales and all records of distribution of all motor vehicles to the same line-make dealers who compete with the dealer requesting the hearing.
Code § 46.2-1569(7).
As I read the statute, it requires that the allocation of vehicles within Virginia be based on a methodology which *71 considers new vehicle sales and equitably relates in some manner the dealer’s percentage of those sales to the manufacturer’s national production or importation. Thus, as the majority opinion “hold[s], ... in determining whether a distributor is in compliance with Code § 46.2-1569(7), the commissioner may consider and base his determination on the distributor’s vehicle allocation methodology.” If that allocation methodology rationally takes into account new vehicle sales and results in a dealer receiving a fair share of new vehicles, the statutory mandate has been satisfied. This reading of the statute resolves what appears to me to be an ambiguity in connecting in a rational manner the various phrases in the statute.
The record establishes that Volkswagen’s area executive often made allocations as frequently as each week and, thus, applied Miller’s sales percentage factor to a smaller number of vehicles than would have been used if done monthly. The record supports the commissioner’s finding that by making allocations as frequently as each week, Volkswagen’s formula determined that the percentage of the pool of available new vehicles representing Miller’s potential allocation was a “fractional vehicle” of less than one. Because those fractional values were rounded down and not cumulated, Miller “was effectively frozen out on a repeated basis from acquiring vehicles in short supply.” The commissioner also found that Volkswagen’s allocation methodology was skewed by the use of a customer satisfaction program that impacted the vehicle allocation in a “punitive and inequitable” manner. The commissioner further found that Volkswagen’s decision to allow its area executive the discretion to override the allocation methodology to remedy these deficiencies was “a rule honored only when Miller requested [an administrative] hearing.” The record supports these findings and the commissioner’s decision that Volkswagen’s methodology of allocation failed to provide Miller with an equitable and fair number of those vehicles that were in short supply.
For these reasons, I concur in the majority opinion’s holding and in the judgment.